

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 1, 2008

**BY HAND DELIVERY**

The Honorable John G. Koeltl
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

   Re: **United States v. Felix Cruz**
      **07 Cr. 997 (JGK)**

Dear Judge Koeltl:

   The Government respectfully submits this letter in response to defendant Felix Cruz's motion to suppress physical evidence and statements recovered by officers of the New York City Police Department ("NYPD") in connection with his April 3, 2007 arrest for criminal possession of a controlled substance in the third degree and criminal trespass in the second degree, and his May 2, 2007 arrest for multiple drug charges, including criminal possession of a controlled substance in the third degree. In light of the defendant's affirmation in support of his motion, in which he disputes several key facts related to both arrests, the Government consents to an evidentiary hearing, which is currently scheduled for February 22, 2008, at 2:30 p.m. Although the Government submits this letter in advance of that hearing, it respectfully requests the opportunity to submit post-hearing briefing regarding any factual and legal issues that arise during the hearing, if necessary.

BACKGROUND

   The defendant is charged in a three count Indictment. Count One charges that the defendant conspired to distribute, and possess with intent to distribute, five grams or more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(B), and 846. Count Two charges that on or about April 3, 2007, the defendant distributed, and possessed with intent to distribute, mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(C), and Title 18, United States Code, Section 2. Count Three charges that on or about May 2, 2007, the defendant distributed, and possessed with intent to distribute, five grams or more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Sections 812,

841(a)(1), 841(b)(1)(B), and Title 18, United States Code, Section 2. (A copy of the Indictment is attached as Exhibit A).

## APRIL 3, 2007 ARREST

### A. Defendant's Allegations

According to the allegations in the defendant's affirmation, on April 3, 2007, at approximately 7:35 a.m., he was standing inside the gated area of the building located at 203 East 175th Street in the Bronx, which was "open to the public," and was speaking with another person, whom he thought to be a tenant in the building. Affirmation of Felix Crux ("Cruz Aff.") ¶ 2. The defendant asserts that he was stopped by police officers, one of whom he recognized from a prior arrest. *Id.* ¶ 3. According to the defendant, at the time he was stopped by the officers, he was not holding a plastic bag and had nothing in his hand. *Id.* ¶ 3. The defendant claims he was questioned by the police and then placed under arrest for trespass. *Id.* ¶ 4. Following the arrest, the police allegedly found in the defendant's possession a quantity of crack cocaine. *Id.* ¶ 4. The defendant was then questioned by the police and made statements. *Id.* ¶ 10.

### B. Expected Evidence at Hearing

At the hearing, the Government expects the evidence to show, among other things, that on or about the morning of April 3, 2007, two NYPD officers ("Officer-1" and "Officer-2") were on routine patrol in plain clothes and in an unmarked police car. The officers passed by the building located at 203 East 175th Street (the "Premises"), which is located in a drug-prone area of the 46th Precinct. The Premises has a courtyard area closed off to the sidewalk by a gate and has a "Clean Halls" Affidavit posted on the front of the building facing the sidewalk.[1] As the officers passed by the Premises, Officer-1 saw the defendant with an unidentified male inside the courtyard on the other side of the gate, which was open at the time. Officer-1 noticed that the unidentified male was holding a quantity of cash and that the defendant was holding a clear plastic bag containing what appeared to be narcotics.

The officers got out of their car and walked towards the two men. As they approached, the unidentified male left and went into the building, while the defendant placed the hand that was holding the bag into his waistband and then walked towards the front gate. The officers approached the defendant, identified themselves as police officers, and Officer-1 asked the defendant, in substance and in part, if he lived in the building or knew anyone in the building. When the defendant responded in the negative to both questions, Officer-1 asked him for

---

[1] A "Clean Halls" Affidavit is filed with the NYPD by the owner of a building, or someone else with proper authority, and grants the NYPD the right to enter the premises at anytime day or night for the purpose of arresting trespassers.

The Honorable John G. Koeltl
February 1, 2008
Page 3 of 6

identification. The defendant gave Officer-1 a New Jersey address. The officers then placed the defendant under arrest for trespassing and placed him in their patrol car to take him to the 46th Precinct for arrest processing. While in the patrol car, the defendant told the officers, in substance and in part, that he had crack cocaine on him and reached in his waistband and pulled out several bags containing crack cocaine.

    C.    <u>Applicable Law</u>

A police officer may initiate a consensual encounter with a private citizen in a public forum for any reason, without violating the Fourth Amendment. *See Florida* v. *Bostick*, 501 U.S. 429, 434 (1991); *Terry* v. *Ohio*, 392 U.S. 1, 34 (1968) (White, J., concurring) ("There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets."). Accordingly, a police officer need not have any objective level of suspicion or justification whatsoever to initiate this kind of contact, and such contact does not, without more, amount to a "seizure" implicating the Fourth Amendment's protections. *United States* v. *Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992). In a consensual encounter, officers may permissibly ask questions, such as why the subject is at that location, and may make requests for identification, "as long as the police do not convey a message that compliance with their requests is required." *Bostick*, 501 U.S. at 434-35; *see also Hiibel* v. *Sixth Judicial District Court of Nevada*, 542 U.S. 177, 185 (2004) ("Interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure") (quoting *INS* v. *Delgado*, 466 U.S. 210, 216 (1984)).

A consensual encounter does not ripen into a detention or a seizure unless, "under the circumstances, a reasonable person would have believed that he was not free to leave." *United States* v. *Peterson*, 100 F.3d 7, 10 (2d Cir. 1996); *Gardiner* v. *Incorporated Village of Endicott*, 50 F.3d 151, 155 (2d Cir. 1995) (quoting *Michigan* v. *Chesternut*, 486 U.S. 567, 573 (1988)). "The test is an objective one, based on how a reasonable *innocent* person would view the encounter." *United States* v. *Glover*, 957 F.2d at 1008 (emphasis added) (citations omitted); *accord United States* v. *Springer*, 946 F.2d 1012, 1016 (2d Cir. 1991). Among the factors that may suggest that a "seizure" has occurred are:

> the threatening presence of several officers; the display of a weapon; the physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

*Glover*, 957 F.2d at 1008; *United States v. Hooper*, 935 F.2d 484, 491 (2d Cir. 1991). It is not necessary that the questioning officer "affirmatively advise an interviewee that he is free to leave

The Honorable John G. Koeltl
February 1, 2008
Page 4 of 6

or terminate the interview" in order to avoid turning an otherwise consensual encounter into a "seizure." *United States* v. *Springer*, 946 F.2d at 1016.

A police officer may also conduct a brief "investigative detention" by stopping a person to investigate possibly criminal behavior, so long as at the time the officer effects the stop, the officer has "'reasonable suspicion' to believe that criminal activity has occurred or is about to occur." *United States* v. *Tehrani*, 49 F.3d 54, 58 (2d Cir. 1995) (citing *United States* v. *Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992)); *see also Terry* v. *Ohio*, 392 U.S. 1 (1968). "Reasonable suspicion" arises when law enforcement officers are able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest]." *United States* v. *Elmore*, 482 F.3d 172, 178-79 (2d Cir. 2007) (quoting *Terry*, 392 U.S. at 21). The test for reasonable suspicion is a "rather lenient" one, *United States* v. *Santana*, 485 F.2d 365, 368 (2d Cir. 1973), and "can be established with information that is different in quantity or content than that required to establish probable cause . . . [and] can arise from information that is less reliable than that required to show probable cause." *Alabama* v. *White*, 496 U.S. 325, 330 (1990). Moreover, reasonable suspicion is measured from the perspective "of a reasonable and cautious police officer on the scene, guided by his experience and training." *United States* v. *Colon*, 250 F.3d 130, 134 (2d Cir.2001) (quoting *United States* v. *Oates*, 560 F.2d 45, 61 (2d Cir.1977)).

### MAY 2, 2007 ARREST

A.   Defendant's Allegations

According to the allegations in the defendant's affirmation, on May 2, 2007, he was inside an apartment located at 1756 Topping Avenue in the Bronx. Cruz Aff. ¶ 5. The defendant asserts that he had been invited into the apartment by Bianca Menendez, who resided in the apartment, and it was his intention to remain in the apartment overnight as her guest. *Id.* ¶ 5. The defendant claims that shortly after midnight, he was seated in the living room of the apartment next to Ms. Menendez when the police entered the apartment by force. *Id.* ¶ 6. According to the defendant, no one had opened the door of the apartment to allow the police to enter, nor had anyone invited them into the apartment. *Id.* ¶ 6. The defendant claims that he did not possess any controlled substance when the police entered the apartment, but was nevertheless placed under arrest along with the other individuals in the apartment. *Id.* ¶ 7. The defendant asserts that he was taken out of the apartment with the other individuals, and that the police reentered the apartment and searched it, seizing various physical evidence. *Id.* ¶¶ 8 & 9. Following his arrest, the defendant was questioned by the police and made statements. *Id.* ¶ 10.

The Honorable John G. Koeltl
February 1, 2008
Page 5 of 6

    B.    <u>Expected Evidence at Hearing</u>

At the hearing, the Government expects the evidence to show, among other things, that on or about the evening of May 2, 2007, four NYPD officers ("Officer-3," "Officer-4," "Officer-5," and "Officer-6") were on routine patrol on Topping Avenue, near 175th Street in the Bronx. The officers entered the building located at 1756 Topping Avenue because they had information that drugs were being sold inside the building. As the officers entered the lobby of the building, they smelled a strong odor of marijuana, which got stronger as they ascended the stairs. As they approached the third floor landing, the officers could see marijuana smoke in the hallway near Apartment 3B (the "Apartment"). The door of the Apartment was open and a Hispanic female was standing in the threshold. The officers approached the female in the doorway. When they came closer to her, Officer-3 and Officer-4 looked into the Apartment through the open door and could see into the living room. There, they saw the defendant seated on a sofa next to another female. In front of the defendant, on a table, was a large pile of crack cocaine and several baggies, and the defendant was in the process of packaging the crack. The officers then entered the apartment, arrested the defendant, and seized the crack cocaine and other evidence from the apartment.

    C.    <u>Applicable Law</u>

Among the recognized exceptions to the Fourth Amendment's warrant requirement is that exigent circumstances allow the police to enter a residence without a search warrant. *See United States* v. *MacDonald*, 916 F.2d 766, 769 (2d Cir. 1990). "The essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or take action." *MacDonald*, 916 F.2d at 769 (citations omitted). The test for determining whether a warrantless entry is justified by exigent circumstances is an objective one, assessed under the totality of the circumstances. *United States* v. *Medina*, 944 F.2d 60, 68 (2d Cir. 1991).

In determining whether exigent circumstances exist, courts consider the following non-exhaustive list of factors: (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry. *United States* v. *Fields*, 113 F.3d 313, 323 (2d Cir. 1997) (citing *MacDonald*, 916 F.2d at 769-70). Courts have also considered whether law enforcement officers had a reasonable belief that quick action was necessary to prevent the destruction of evidence. *Id.* at 323; *United States* v. *Brown*, 52 F.3d 415, 421 (2d Cir. 1995). Observing a defendant packaging narcotics in plain view inside a residence may provide both probable cause for an arrest and the exigent circumstances necessary to justify a warrantless entry into the residence to effectuate the arrest. *See Fields*, 113 F.3d at

The Honorable John G. Koeltl
February 1, 2008
Page 6 of 6

321-23 (warrantless entry into residence to effectuate an arrest justified by exigent circumstances where police stationed in side yard of building saw defendants packaging crack cocaine through window).

   Police officers, when lawfully in a particular location within a residence, may seize evidence found in plain view. *See Horton* v. *California*, 496 U.S. 128, 133, 135-36 (1990). A warrantless seizure is justified under the plain view doctrine if the officer has a legal right to be in the place from where he sees the object subject to seizure and a "lawful right of access to the object itself," and if the object's incriminating nature is "immediately apparent." *Id.* at 136-37; *see also United States* v. *Gori*, 230 F.3d 44, 50 (2d Cir. 2000) (warrant not required to seize "an item in plain view if there is cause to believe that it is evidence of crime").

      \*   \*   \*

   The Government respectfully submits that after hearing the live testimony of the Government witnesses, and after applying the relevant law to those facts, the Court will find that the physical evidence and statements recovered from the defendant on April 3, 2007 and May 2, 2007 were not seized in violation of the Fourth Amendment. Accordingly, the Court should deny the defendant's motion in its entirety.

            Respectfully submitted,

            MICHAEL J. GARCIA
            United States Attorney


        By:  /s/ Christian R. Everdell
            Christian R. Everdell
            Assistant United States Attorney
            (212) 637-2556

cc:  Robert M. Baum, Esq. (by fax)