**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

February 20, 2008

**<u>REQUEST TO BE FILED UNDER SEAL</u>**

**<u>BY HAND</u>**

The Honorable John G. Koeltl
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1030
New York, New York 10007

> **Re:**  **<u>United States v. Felix Cruz</u>**
> **07 Cr. 997 (JGK)**

Dear Judge Koeltl:

The Government respectfully submits this letter to notify the Court and defense counsel of certain information concerning an expected Government witness at the suppression hearing to be held in this matter on February 22, 2008, and to request a ruling <u>in</u> <u>limine</u> precluding examination of the witness on this information at the hearing on the grounds that it is irrelevant and, in the alternative, substantially more prejudicial than probative.  The witness at issue is Lieutenant Paul McMahon of the New York City Police Department ("NYPD"), and the matter about which the Government seeks to preclude examination relates to a substantiated Civilian Complaint Review Board ("CCRB") complaint against Lieutenant McMahon that resulted in NYPD disciplinary action in the form of a Command Discipline.[1]

---

[1] The Civilian Complaint Review Board ("CCRB") is a private entity created in 1993 which investigates complaints lodged against NYPD officers by private citizens.  The CCRB is not an adjudicative body and does not have the power to discipline NYPD officers.  Rather, it investigates allegations by interviewing complainants and police officers and makes findings and recommendations to the NYPD in the form of memoranda.  The NYPD may then discipline its officers in the form of "Instructions" (regarding certain procedures to follow in the future), "Command Disciplines," or "Charges and Specifications."  "Instructions" involve a subject officer's commanding officer instructing him or her on the proper procedures that should have been followed under the circumstances. "Instructions" are considered the least punitive measure because they do not result in formal proceedings.  A "command discipline" is imposed directly by the subject officer's commanding officer and may vary based on the seriousness of the misconduct, the officer's disciplinary history, and the officer's performance records. The penalties range from an oral warning and admonishment to a forfeiture of up to ten days of vacation or accrued time. "Charges and Specifications" is the most serious disciplinary measure.  This involves the lodging of formal

Honorable John G. Koeltl
February 20, 2008
Page 2 of 5

## BACKGROUND

A.    Expected Testimony of Lieutenant McMahon

The Government currently plans to call Lieutenant McMahon at the upcoming suppression hearing to testify about the arrest of Felix Cruz on May 2, 2007.[2]  In sum, it is expected that Lieutenant McMahon will testify that he and three other NYPD officers were conducting a "vertical" patrol in the apartment building located at 1756 Topping Avenue in the Bronx, which is in an area of the 46th Precinct with a high rate of drug activity.[3]  When Lieutenant McMahon entered the lobby of the building, he smelled a strong odor of marijuana, which got stronger as he and the other officers ascended the stairs.  As they approached the third floor landing, Lieutenant McMahon could see marijuana smoke in the hallway near Apartment 3B (the "Apartment").  The door of the Apartment was open and a female was standing in the threshold.  Lieutenant McMahon approached the female in the doorway.  When he came closer to her, he looked into the Apartment through the open door and could see into the living room. There, he saw the defendant seated next to another female.  In front of the defendant, on a table, was a large pile of crack cocaine and several baggies, and the defendant was in the process of packaging the crack.  Lieutenant McMahon entered the apartment with the other officers, arrested the defendant, and seized the crack cocaine and other evidence from the apartment.

B.    CCRB Case Number 200003842

CCRB Case Number 200003842 arose out of an arrest on April 26, 2000, by an officer other than then-Sergeant McMahon.  The complainant alleged that after being brought to the precinct, he was strip-searched.  McMahon was the supervisor in charge of the officers who conducted the alleged search.  When interviewed by a CCRB investigator, McMahon stated that he did not recall the incident.  The CCRB Case Closing Form recommended that the allegation of abuse of authority against McMahon be substantiated because the search was performed by officers under his supervision.  Central to the investigator's recommendation was McMahon's practice of authorizing strip-searches by officers under his supervision, in contradiction to NYPD procedure requiring that strip-searches be authorized and logged by the precinct desk sergeant. The Case Closing Form concluded that the strip-search was not valid because the criteria for a strip search were not present.  The investigator who prepared the Case Closing Form also noted that the officers involved in the complainant's arrest were "less credible" than the complainant. There is no indication that McMahon was involved in the arrest.

---

administrative charges against the subject officer who, as a result, may face loss of vacation time, suspension, or termination from the police department.  "Charges and specifications" may result in an administrative trial.

[2] The Government also intends to call Officer Kurt Maier, who was present with Lieutenant McMahon at the May 2, 2007 arrest, and Officer Alejandro Ponce, who was present at the defendant's separate arrest on April 3, 2007.

[3] A "vertical" is when a team of officers moves up through the common areas of a building, such as staircases and hallways, looking for criminal activity.

Honorable John G. Koeltl
February 20, 2008
Page 3 of 5

The CCRB substantiated the allegation of abuse of authority against McMahon, as well as an allegation against the arresting officer based on a finding that the arrest was improper. McMahon received an NYPD command discipline for failing to make a command log entry, and lost one vacation day.

## DISCUSSION

The Government respectfully submits that the Court should preclude examination of Lieutenant McMahon on the incident described above because the underlying facts do not bear on the credibility of Lieutenant McMahon or the issues that are the subject of this suppression hearing, and raising the incident on cross-examination would be unduly prejudicial.

A.    Applicable Law

Rule 402 of the Federal Rules of Evidence provides, in relevant part, that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Rule 608(b) of the Federal Rules of Evidence provides that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness . . . .

Fed. R. Evid. 608(b). Under Rule 608(b), the Court first must determine whether the specific conduct is probative of the witness's character for truthfulness or untruthfulness. The Court must next decide whether the probative value of the evidence is substantially outweighed by unfair prejudice.

It is well settled that the scope and extent of cross-examination is within the sound discretion of the court, United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir. 2004), and that the court may properly bar cross-examination which is marginally relevant to the issues before the court. United States v. Maldonado-Rivera, 922 F.2d 934, 956 (2d Cir. 1990). "[T]he decision to restrict cross-examination will not be reversed absent an abuse of discretion." United States v. Lawes, 292 F.3d 123, 131 (2d Cir. 2002) (internal citations omitted). The Second Circuit has repeatedly upheld district courts' exercise of discretion in imposing reasonable limits on the subjects that may be inquired into on cross-examination. See United States v. Rosa, 11 F.3d 315,

336 (2d Cir. 1993) (district court properly precluded cross-examination on alleged rape and burglary by witness because conduct did not bear directly on witness' credibility and allegations were unsubstantiated); United States v. Conception, 983 F.2d 369, 392 (2d Cir. 1992) (district court properly barred inquiry into alleged murder by witness because insufficient evidence that murder occurred or that it was committed by witness); United States v. Rabinowitz, 578 F.2d 910, 912 (2d Cir. 1978) (district court properly barred inquiry into witness' prior acts of sodomy of young children).

B.   Analysis

Because the above-described incident is irrelevant to the issues being addressed at the suppression hearing and lacks any probative value concerning Lieutenant McMahon's "character for truthfulness or untruthfulness," it is not a proper subject for cross-examination. Neither the CCRB investigator, nor the NYPD, made any adverse credibility findings against Lieutenant McMahon. As stated above, the investigator handling Lieutenant McMahon's CCRB case concluded that the officers involved in the complainant's *arrest* were less credible than the complainant, but there is no indication that Lieutenant McMahon was involved in the arrest. Indeed, Lieutenant McMahon was entirely forthcoming in telling the CCRB investigator that when members of his team brought arrestees back to the precinct, he typically acted as the desk sergeant and decided whether or not to authorize a strip-search.

Furthermore, the substantive outcomes of the NYPD and CCRB proceedings against Lieutenant McMahon are irrelevant to the credibility of his testimony in this hearing. Rule 608(b) permits cross-examination only as to instances of conduct that impact on the witness's character for truthfulness. None of the substantive findings summarized above are relevant to Lieutenant McMahon's credibility, nor probative of his character for truthfulness or untruthfulness. Accordingly, the findings themselves are beyond the scope of proper cross-examination. See Rosa, 11 F.3d at 336 (2d Cir. 1993) (precluding cross-examination regarding allegations of sexual abuse); United States v. Devery, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996) (same); United States v. Hastings, 577 F.2d 38, 41 (8th Cir. 1978) (precluding cross-examination on fact of dishonorable discharge received because witness failed to wear his uniform). Any minimal probative value that these incidents may have regarding their credibility is substantially outweighed by the danger of unfair prejudice, confusion and undue delay. See, e.g., Lawes, 292 F.3d at 131-32; see generally Advisory Comm. Notes to Fed. R. Evid. 608, 2003 Amendments ("Rule 608(b) prohibits counsel from mentioning that a witness was suspended or disciplined for the conduct that is the subject of impeachment, when that conduct is offered only to prove the character of the witness.").

In United States v. Peter Foreman, 07 Cr. 735 (LAK), Judge Lewis A. Kaplan was presented with a virtually identical motion in limine to preclude questioning of Lieutenant McMahon on the same CCRB complaint.[4] In a written order, Judge Kaplan granted the Government's motion, finding that "[t]he evidence in question is neither relevant to the issues to

_____
[4] Judge Kaplan was also asked to preclude questioning of another officer, who is not involved in this case, concerning other complaints.

Honorable John G. Koeltl
February 20, 2008
Page 5 of 5

be tried at the suppression hearing nor probative of the character of the witness[] for truthfulness or untruthfulness." (A copy of Judge Kaplan's order is attached hereto as Exhibit A.) The Government respectfully submits that Judge Kaplan's ruling was correct and that permitting defense counsel to examine Lieutenant McMahon on this complaint will distract from the basic, straightforward issue before the Court – whether the entry into the Apartment was lawful.

## CONCLUSION

For the foregoing reasons, the defendant should be precluded from questioning Lieutenant McMahon at the upcoming suppression hearing regarding the complaint discussed above. Likewise, the defendant should be precluded from offering any extrinsic evidence relating to these matters.

Finally, due to the sensitive nature of the information contained in this letter, the Government respectfully requests that the Court file this letter under seal.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney


By:    /s/ Christian R. Everdell
       Christian R. Everdell
       Assistant United States Attorney
       Telephone:  (212) 637-2556


cc:    Robert M. Baum, Esq. (by hand)